# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

**ROARK & HARDEE L.P. d/b/a The Warehouse Saloon and Billiards; BILL HARDEE; DEI GRATIA, INC. d/b/a The Elysium; JOHN WICKHAM; PUB DRAUGHT, INC. d/b/a Lovejoys Tap Room and Brewery; JOSEPH (CHIP) TAIT; GMC INVESTMENT, INC. d/b/a Ego's; CANARY ROOST, INC; CANARY HUT, INC; GAIL E. JOHNSTON; SHEENA SEMMLER; KEEP AUSTIN FREE PAC; TONY SIRGO; EDWARD CHECK,**
              **Plaintiffs,**

-vs-                                                                           **Case No. A-05-CA-837-SS**

**CITY OF AUSTIN,**
              **Defendant.**

_____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BE IT REMEMBERED on the 17th day of August 2006, the Court called the above-styled cause for an evidentiary hearing and a trial on the merits. At the close of trial, the Court granted the parties leave to file additional briefing until September 7, 2006. The trial lasted one day and the Court heard testimony from the following witnesses: David Lurie, Carolyn Espeseth, Karina Moore, Azita Vaiszadeti, James H. Douglas, Marcel Elizondo, and Jeffrey G. Herring. Having considered Plaintiffs' evidence, Defendant's evidence, the supplemental briefing, the arguments of counsel at the trial, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

**Background**

Plaintiffs filed this lawsuit in the 98th Judicial District of Travis County, Texas on September 16, 2005, seeking declaratory and injunctive relief. Defendant City of Austin ("City") removed the case to this Court on September 26, 2005.[1] This Court held an evidentiary hearing on Plaintiff's Motion for a Preliminary Injunction on October 11, 2005, and issued an Order on October 18, 2005 granting in part and denying in part Plaintiff's motion. The Court found that Plaintiffs had not shown a substantial likelihood of success on the merits of their facial vagueness challenges to the terms "smoking," "necessary steps," and "smoking accessory" as used in the ordinance. Order of Oct. 18, 2006, 4–8. Likewise, the Court rejected Plaintiffs' First Amendment and overbreadth challenges to the ordinance. *Id.* at 8–10. With regard to enforcement of the ordinance through the use of fines, the Court granted Plaintiffs' motion and enjoined the City from imposing any fine under § 10-6-11(a) that exceeds $500, the limit provided by Texas Penal Code § 6.02(f). *Id.* at 10–12. The Court also enjoined the City from suspending or revoking any city permits or licenses under the ordinance without allowing for expeditious judicial review. *Id.* at 12–13. The two injunctions entered have remained in effect to date.

Plaintiffs' Amended Complaint, another everything-but-the-kitchen-sink pleading, seeks declaratory and injunctive relief pursuant to the First, Fifth, and Fourteenth Amendments of the United States Constitution; U.S. CONST. art. VI, cl.2; 28 U.S.C. § 2201; 15 U.S.C. § 1331; 42 U.S.C. § 1983; 42 U.S.C. § 2000cc; federal common law; TEX. CONST. art. I, § 6; TEX. CONST. art. I, § 8; TEX. CONST. art I, § 10; TEX. CONST. art. I, § 19; TEX. CONST. art. XI, § 5; TEX. CIV. PRAC. & REM. CODE § 37; TEX. CIV. PRAC. & REM. CODE § 110; TEX. LOCAL GOV'T CODE § 101; TEX. PENAL

---

[1] The City asserted that the federal constitutional claims were the basis for the removal.

CODE § 6.01(a); TEX. PENAL CODE § 12.23; TEX. PENAL CODE § 48; TEX. TAX CODE § 154; state common law; City of Austin Charter art. IV; City of Austin Charter art. VI; and City of Austin Charter art. VII. Pls.' Am. Compl. 3–4.

Plaintiffs seek a declaratory judgment that the City of Austin's "Smoking in Public Places" ordinance (the "ordinance" or "smoking ordinance"), Austin City Code Chapter 10-6, is entirely invalid as unconstitutional and/or illegal and/or cannot be legally enforced as written. Pls.' Am. Compl. 41. Alternatively, Plaintiffs seek a declaratory judgment that those portions of the ordinance the Court preliminarily enjoined are unconstitutional and/or illegal and/or cannot be legally enforced as written. *Id.* Plaintiffs also seek a permanent injunction enjoining the City of Austin from enforcing the ordinance. *Id.* at 39. Alternatively, Plaintiffs seek to make permanent the Court's preliminary injunctions already entered striking down certain portions of the ordinance. *Id.*

The City of Austin's smoking ordinance resulted from a ballot initiative passed on May 7, 2005. The purpose of the ordinance is to protect persons in public places and employees in their occupational environments from second-hand smoke. The City is in a unique defensive position in this case because the ordinance was written and passed by means of a voter initiative and not by the city council.[2] The ordinance, which took effect on September 1, 2005, generally prohibits smoking in all enclosed public places in Austin including bars, restaurants, and workplaces, subject to a few very limited exceptions.[3] Austin City Code Ch. 10-6.

---

[2] Because the ordinance was enacted by the voters, the City Charter provides that "an ordinance so adopted may be repealed or amended at any time after the expiration of two (2) years by favorable vote of six (6) members of the council." Austin City Charter art. IV, § 6. Because of this limit on the power of the City Council to presently amend the ordinance, the City is in the position of defending the ordinance "as is" even though they did not draft or enact it.

[3] The limited exceptions include dwelling units, hotel or motel rooms, retail tobacco stores, nursing homes, outdoor areas of workplaces, bingo facilities, fraternal organization facilities, and businesses issued

At the evidentiary hearing and trial, Plaintiffs presented their evidence and argument in two groups: the Johnson Plaintiffs[4] and the non-Johnson Plaintiffs.[5] The Court heard evidence and argument regarding the following claims during the evidentiary hearing and trial: (1) the ordinance is unconstitutionally vague, both facially and as-applied, with regard to the "necessary steps" standard; (2) the ordinance is enforced against business owners and operators as a strict liability crime; and (3) the ordinance is selectively enforced only against business owners and operators and not against individual smokers.

## Analysis

### I.  Declaratory Relief Standard

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides "any court of the United States, on the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "The purpose of the Declaratory Judgment Act is to afford added remedy to one who is uncertain of his rights and who desires early adjudication thereof without having to wait until his adversary should decide to sue and to act at his peril in the interim." *Okpalobi v. Foster*, 190 F.3d 337, 347 (5th Cir. 1999). "[W]hether to grant declaratory relief is a matter for the [district] court's sound discretion." *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir. 1984). A district court is not automatically required to adjudicate claims for declaratory judgments, and "[i]n the declaratory judgment context, the normal principle that federal

---

a restricted permit by the city on or before November 2, 2004. Austin City Code § 10-6-3.

[4] The Johnson Plaintiffs are Gail E. Johnson and the businesses he owns: GMC Investment, Inc. (d/b/a Ego's), Canary Roost, Inc., and Canary Hut, Inc.

[5] The non-Johnson Plaintiffs simply consist of all other remaining Plaintiffs. A number of the original Plaintiffs in this case withdrew and were dismissed from this case before this evidentiary hearing and trial.

courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Here, Plaintiffs seek a declaration that the entire ordinance is unconstitutional or, alternatively, that certain parts of the ordinance are unconstitutional.

## II.   Permanent Injunction Standard

The party seeking a permanent injunction must establish: "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (citing *Dresser-Rand, Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847–48 (5th Cir.2004)).

## III.   Vagueness

### A.   Facial Vagueness

Plaintiffs' primary claim continues to be that the ordinance is unconstitutionally vague on its face because it is so indefinite that it does not give business owners and operators fair notice as to what conduct is prohibited and because it lacks clear standards for enforcement. The Fifth Circuit employs a two-part void-for-vagueness test when evaluating criminal laws under the due process clause. *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) (*citing City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality)). "Vagueness may invalidate a criminal law for either of two independent reasons": (1) "it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits;" or (2) "it may authorize and even encourage arbitrary and discriminatory enforcement." *Escalante*, 239 F.3d at 680.

The United States Supreme Court has explained as follows:

> the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . , consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). "Vague laws offend several important values." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Id.* at 108–09.

As this litigation has progressed, Plaintiffs have continually pinpointed the term "necessary steps" as the most problematic term in the ordinance with regard to their facial vagueness challenge. The ordinance provides in relevant part: "[t]he owner or operator of a public place commits an offense if the person fails to take *necessary steps* to prevent or stop another person from smoking in an enclosed area in a public place." AUSTIN CITY CODE § 10-6-2(E) (emphasis added).

This Court heard arguments regarding the vagueness of "necessary steps" at the preliminary injunction hearing in this case, and at that point determined that it would not enjoin the ordinance in light of the City of Austin's proffered interpretation of "necessary steps" as "reasonable steps" and pledges to enforce the ordinance accordingly and to make available guidelines for business owners

and operators to follow in their attempts to comply with the ordinance. Order of October 18, 2005 6–7.

Given the amount of time that has passed since the Court's initial ruling in this case and the new evidence before the Court, the Court will reexamine whether the term "necessary steps" is unconstitutionally vague. The City of Austin has promulgated two sets of guidelines for business owners and operators regarding "necessary steps" under the smoking ordinance. The first set of guidelines, effective in October 2005, state, "Necessary steps include no smoking signs, absence of ash trays, asking the patron to stop smoking, asking the patron to leave the establishment if they refuse to stop smoking and following your standard business practices for enforcing house rules." Pls.' Ex. PJ-2. The second set of guidelines was released in March 2006; these guidelines added the step of refusing service to a person who is smoking. Pls.' Ex. PJ-3.

David Lurie, Director of the Austin/Travis County Health and Human Services Department ("HHSD") testified that the new step of refusing service was added after the Department received "some feedback that there were requests for more clarification in terms of the necessary steps." Evid. Hrg. Tr. 34. The fact that the guidelines regarding "necessary steps" are subject to change over time indicates that the term "necessary steps" is vague and is not controlled by any discernible, explicit standard.

Even more troubling is the testimony the Court heard from several HHSD officials and employees, as well as the representations by the City's counsel, that the five steps under the guidelines are not exclusive and that following all of the guidelines does not create a safe harbor from liability for business owners and operators. For example, David Lurie testified that "there could, in fact, be a violation and citation" issued to a bar owner even if they have followed all five

steps if there is still a customer smoking in the bar. Evid. Hrg. Tr. 37. HHSD inspector Karina Moore testified that she issued a notice of violation to Warehouse Saloon on February 23, 2006 with the following comment on the notice, "Observed customer smoking a cigarette while sitting at the bar. Owner states that he has complied with the ordinance by taking all five of the steps listed above, A through E." Evid. Hrg. Tr. 107. Moore testified that she enforces the ordinance so that a business owner or operator must take the necessary steps, including following their standard business practices for enforcing house rules, to get a person to stop smoking; however, she also explained that HHSD has no standard policy about what bar owners should do, such as calling the police, because HHSD does not know each business's policies and would need to know them to determine whether or not they had taken the necessary steps. Evid. Hrg. Tr. 122–24. After being posed a lengthy hypothetical involving a business with the practice of never calling the police for a violation of house rules, which has taken all of the other steps under the guidelines to prevent a person from smoking in their business, Moore said she was "not sure" if there was a violation of the ordinance. *Id.* at 127–28.

Jeffrey Herring, an inspector for the HHSD, testified that he must use some discretion in determining when to issue a notice of violation under the smoking ordinance. Evid. Hrg. Tr. 189. Herring also admitted that he had issued some citations where the only violation was that people were smoking in the bar. *Id.* at 189–90. Herring further testified that when he investigated the Canary Roost and the Canary Hut he never asked what the house policy was, nor did he know what it was. *Id.* at 188.

When questioned regarding what the City expects bar owners to do when a smoker refuses to stop smoking in their establishment, David Lurie testified that "it depends on the circumstances,"

and there is no one precise guideline. Evid. Hrg. Tr. 195. Both David Lurie and Karina Moore indicated that calling the police and filing a criminal trespass charge would be a "necessary step" under certain circumstances. *Id.* at 129, 193.

This Court has given the City many opportunities to explain what actions are required of business owners and operators under the "necessary steps" standard; however, the City persists in dodging the question and failing to give definitive guidance to business owners and operators about how they might avoid liability under the ordinance. The City has promulgated guidelines, which have been amended at least once, to offer guidance; however, the evidence at trial clearly established that these guidelines are not a definitive list, are subject to amendment, do not create a safe harbor from prosecution if complied with, and are subject to differing interpretations by HHSD employees and business owners and operators.

"[A]dministrative guidance has the potential to save an otherwise vague statute" *Empire St. Rest. & Tavern Ass'n., Inc. v. New York*, 360 F. Supp. 2d 454, 464 (N.D.N.Y. 2005) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 504 (1982)); however, a year has passed since the effective date of the ordinance and the City still has not created any definitive guidance for business owners and operators as to what constitutes "necessary steps" and just how far they must go to avoid liability under the ordinance. Although the evidence at the preliminary injunction hearing indicated that owners and operators who wanted to comply with the ordinance could reasonably anticipate what actions they must take, the evidence at this hearing, almost one year later, established that no one, not even City officials and employees, knows how to avoid liability under the ordinance. The Court is very troubled by the City's suggestion that calling the police and

charging a patron with criminal trespass is a "necessary step" under certain circumstances.[6] Charging a patron with criminal trespass because he or she refuses to stop smoking inside an establishment is an onerous burden on a business owner or operator and goes beyond the Court's interpretation of "reasonable steps"; it could lead to loss of business, lost time for both owners and employees, and even the possibility of civil liability.

For example, as part of its post-trial brief the City filed a proposed municipal court jury charge for owners charged with allowing smoking in violation of the smoking ordinance. City's Supp. Post-Trial Br., Ex. A. The proposed charge states: "'necessary steps' means only those steps that are 'reasonable' for a person of ordinary intelligence and understanding. You are further instructed that 'necessary steps' include: (1) no smoking signs and (2) absence of ashtrays." *Id.* at 1. Nowhere in the proposed charge is there mention of the additional three to four guidelines steps because the City explains that including them would constitute an impermissible comment on the evidence. City's Supp. Post-Trial Br. 22. This statement highlights the City's internal conflict regarding what "necessary steps" means and whether the guidelines actually give any meaningful guidance to owners and operators regarding what they must do to comply with the ordinance and to avoid prosecution.

The face of the ordinance itself provides only two discrete steps that business owners and operators must take: (1) conspicuously posting a "No Smoking" sign, symbol, or other sign reasonably prohibiting smoking in each place where smoking is prohibited and at each entrance; and (2) removing any ashtray or other smoking accessory from a place where smoking is prohibited.

---

[6] The Court recalls testimony at the preliminary injunction hearing that the Austin Police Department was not particularly interested in responding to calls regarding individuals smoking in bars.

AUSTIN CITY CODE § 10-6-8. As explained above, the City's attempts to delineate other "necessary" or "reasonable" steps that business owners and operators must take to avoid liability have led to further confusion and have not remedied the vagueness of the term "necessary steps."

Although the Court suspects that there are some bar owners and operators purposely flouting the ordinance and/or enforcing it with a wink and a smile, this does not lessen the importance of the constitutional right of citizens to know what conduct is and is not prohibited by law. Because "necessary steps" under § 10-6-2(E) is unconstitutionally vague, the only violations for which the City may hold owners and operators liable are found in § 10-6-8: failure to post no smoking signs and failure to remove ashtrays and other smoking accessories. AUSTIN CITY CODE § 10-6-8. Plaintiffs have succeeded on the merits of this claim and have also established the other factors relevant to permanent injunctive relief: that a failure to grant the injunction will result in irreparable injury; that said injury outweighs any damage the injunction will cause the opposing party; and that the injunction will not disserve the public interest.[7] Accordingly, the Court will enter a permanent injunction consistent with this ruling.

### B.    As-Applied Vagueness

Having decided that the term "necessary steps" is unconstitutionally vague on its face, the Court need not reach the issue of whether it is vague as applied to certain Plaintiffs in this action.

---

[7] The public certainly has an interest in knowing what conduct is and is not prohibited by law. The Court is confident that the City is capable of enforcing the ordinance through the remaining two requirements applicable to business owners and operators and through enforcement against individual smokers such that the public health benefits of the smoking ban will not be lost.

### C.    Other Terms

Plaintiffs also claimed the terms "smoking" and "smoking accessory" were unconstitutionally vague during the preliminary injunction hearing in this case. The Court determined at that time that the terms are not so vague that ordinary people would not understand what is prohibited by them, nor would they lead to arbitrary or discriminatory enforcement of the ordinance. Plaintiffs' evidence and arguments remain largely unchanged with regard to these terms, and the Court's decision that they are not vague on their face stands.[8]

## IV.    Equal Protection/Selective Enforcement

Plaintiffs assert that the ordinance is being selectively enforced against bar owners exclusively and not against smokers themselves in violation of the Equal Protection Clause of the United States Constitution. The City admits it does not enforce the ordinance against individual smokers, has not cited any individual smoker to date, and does not intend to do so. The Court finds the City's refusal to enforce the ordinance against smokers subverts the intent of the ordinance, which clearly creates an offense for individual smokers:

> (A)    A person commits an offense if the person smokes in a public place.
> (B)    A person commits an offense if the person smokes in an enclosed area in a building or facility owned, leased, or operated by the City.
> (C)    A person commits an offense if the person smokes in an enclosed area of a workplace.
> (D)    A person commits an offense if the person smokes within 15 feet from an entrance or openable window of an enclosed area in which smoking is prohibited.
> (E)    The owner or operator of a public place commits an offense if the person fails to take necessary steps to prevent or stop another person from smoking in an enclosed area in a public place.

---

[8] Any unconstitutional applications that may arise under this ordinance can easily be tested in the courts of Texas on an as-applied basis in the context of criminal proceedings initiated by the City.

Austin City Code § 10-6-2 (A)–(E). In fact, the first four of the five offenses enumerated apply to the individual smoker and not to the owner or operator of a public place.

Plaintiffs correctly point out that by failing to enforce the ordinance against smokers, the City has made it more difficult, if not impossible, for owners and operators to conduct themselves without subjecting themselves to criminal charges under the ordinance at the City's discretion. The testimony and other evidence before the Court establishes there are smokers who keep smoking despite being aware of the ordinance, seeing a no smoking sign, observing there are no ashtrays, and being asked, either verbally or in writing, not to smoke. The City's trial witnesses also testified if smokers knew they could be personally cited and other smokers were being cited, this would likely cause them not to smoke. This testimony indicates the City's policy of only enforcing the ordinance against businesses and not against individual smokers has made it more difficult for bar owners and operators to avoid being issued criminal citations under the ordinance. The City contends business owners and operators are in the best position to enforce the ordinance; however, the City, like Pontius Pilate, washes its hands of any responsibility to enforce the ordinance against individual smokers, who were clearly a target of the ordinance.

The Court heard testimony from Azita Vaiszadeti, a bartender at the Canary Roost, who received and signed two notices of violation from a City health inspector, one issued in December 2005, and the other in January 2006. She testified that on January 19, 2006, the Canary Roost received a notice of violation for a patron smoking at the bar despite the fact that she did everything on the City's list of guidelines, including asking customers to go outside to smoke. Evid. Hrg. Tr. 138–39. Vaiszadeti also testified that she asked the investigator, Jeff Herring, to tell the customers to quit smoking, but he refused because he said it was not the part of the law that he enforced. *Id.*

at 139–40.[9]  Finally, Vaiszadeti explained she had asked customers to either stop smoking or to go outside to smoke, but some customers refused and she has found the ordinance to be confusing.  *Id.* at 141.  When asked whether she thought a patron who refused to stop smoking would respond differently to an HHSD investigator who issued him a $200 notice of violation for smoking, she said, "He would probably stop smoking right then and there."  Evid. Hrg. Tr. 153.

Karina Moore, an HHSD inspector, testified she has never issued a notice of violation to a smoker, she has no form for issuing a notice of violation to a smoker, and she has been instructed by HHSD not to ticket individual smokers.  Evid. Hrg. Tr. 112.

To establish a violation of equal protection based on selective enforcement, a plaintiff must show that "the discriminatory selection of him for prosecution is invidious or in bad faith, in that it rests on such impermissible considerations as race, religion, or the desire to prevent his exercise of his constitutional rights." *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998).  "In making these requisite showings, the defendant must rebut the presumption that the government made its decision to prosecute in good faith and in a nondiscriminatory manner" by presenting "clear evidence to the contrary."  *Id.*  A party must show that others similarly situated have not been subject to enforcement proceedings by the government and that there was an impermissible basis for the decision to institute enforcement action against the party, "such as race, religion, or other arbitrary classification."  *United States v. Sage Pharms., Inc.*, 210 F.3d 475, 480 (5th Cir. 2000) (internal citations omitted).

---

[9] Herring also testified and he confirmed that Vaiszadeti asked him to address the customers and that he responded that he was not permitted to enforce the ordinance against individuals.  Evid. Hrg. Tr. 187.

The only real question before the Court is whether the City's policy of selectively enforcing the ordinance only against businesses, regardless of whether or not it is a wise policy, violates the Equal Protection Clause. In light of the standard set forth above, Plaintiffs have not established a constitutional violation because they have not established the City's policy is invidious or in bad faith or that it rests on impermissible considerations. The City has maintained throughout this case that the reason they enforce the ordinance against business owners and operators rather than individual smokers is because they see that as the most efficient use of their resources. Likewise, Plaintiffs have not proven that business owners and operators are "similarly situated" to individual smokers from an equal protection standpoint. Accordingly, Plaintiffs equal protection claim based on selective enforcement is denied.[10]

## V.   Strict Liability

Plaintiffs also assert the "necessary steps" standard unconstitutionally imposes strict liability upon owners and operators when individuals smoke in their establishments. The Court's decision today that the term "necessary steps" is unconstitutionally vague effectively moots Plaintiffs claims that owners and operators are being held strictly liable for individual smokers' conduct.

## VI.   First Amendment and Overbreadth

For the same reasons set forth in the Court's preliminary injunction order and because Plaintiffs have brought forth no new evidence on this issue, the Court rejects as a matter of law Plaintiffs claims that the ordinance violates their First Amendment rights or is overbroad. *See Dutchess/Putnam Rest. & Tavern Ass'n, Inc. v. Putnam County Dept. of Health*, 178 F. Supp. 2d

---

[10] The Court notes that this ruling does not preclude the City from changing its enforcement policy to include enforcement against individual smokers, a change which the City may find particularly appealing given the Court's ruling that the term "necessary steps" is unconstitutionally vague.

396, 406 (S.D.N.Y. 2001) (rejecting First Amendment challenge to smoking regulation's requirement of posting no smoking signs or symbols); *Players, Inc. v. City of New York*, 371 F. Supp. 2d 522,   (S.D.N.Y. 2005) (finding smoking bans not to be overbroad because they are "entirely targeted at conduct—the act of smoking in certain places—rather than at speech, association, or assembly").

## VII. Preliminary Injunctions in Place

As explained above, the Court preliminarily enjoined the City of Austin from: (1) suspending or revoking any city permits or licenses pursuant to Austin City Code § 10-6-11(B) without allowing for expeditious judicial review; and (2) imposing any fine pursuant to Austin City Code § 10-6-11(A) that violates Texas Penal Code § 6.02(f) by exceeding $500. Plaintiffs ask the Court to make these preliminary injunctions permanent, and the City of Austin asks the Court to rescind them.

The ordinance provides two penalties for violations: (1) a Class C misdemeanor punishable by a fine not to exceed $2,000; and (2) the suspension or revocation of an operator's permit or license. Austin City Code § 10-6-11.[11] Plaintiffs seek to invalidate § 10-6-11(A) on the basis that the penalty of a fine up to $2,000 violates Texas Penal Code § 6.02.[12] The conflict between the

---

[11] The full section states:
(A) A person who violates the provisions of this chapter commits a Class C misdemeanor, punishable under Section 1-1-99 (*Offenses; General Penalty*) by a fine not to exceed $2,000. A culpable mental state is not required for a violation of this chapter, and need not be proved.
(B) The city manager may suspend or revoke a permit or license issued to the operator of a public place or workplace where a violation of this chapter occurs.
(C) Each day an offense occurs is a separate violation.
AUSTIN CITY CODE § 10-6-11.

[12] Section 6.02 reads as follows:
(a) Except as provided in Subsection (b), a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.
(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state

ordinance and the Texas Penal Code arises from the addition of § 6.02(f), which took effect on September 1, 2005, the same day the ordinance took effect. Section 6.02(f) changed the law to limit the fine for a violation of a city ordinance that dispenses with a culpable mental state requirement to a maximum of $500. TEX. PENAL CODE § 6.02(f).[13]

The City argues that they can legally impose a fine up to $2,000.00 because § 54.001 of the Texas Local Government Code provides the punishment for an offense, rather then the Texas Penal Code. Def.'s 12(c) Mot. J. [#60] 3–4. However, the City misreads Texas Penal Code § 1.03(b), which states: "The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable *unless the punishment is classified in accordance with this code.* TEX. PENAL CODE § 1.03(b) (emphasis added). The smoking ordinance classifies a violation as a "Class C misdemeanor," a punishment classified in accordance with §§ 12.03 and

---

       is nevertheless required unless the definition plainly dispenses with any mental element.
       (c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.
       (d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:
       (1) intentional; (2) knowing; (3) reckless; (4) criminal negligence.
       (e) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.
       (f) An offense defined by municipal ordinance or by order of a county commissioners court may not dispense with the requirement of a culpable mental state if the offense is punishable by a fine exceeding the amount authorized by Section 12.23.
TEX. PENAL CODE § 6.02.

       Section 12.23 limits the fine for a Class C misdemeanor to no more than $500. TEX. PENAL CODE § 12.23.

     [13] When the ordinance was drafted it was no doubt drafted in accordance with Texas Local Government Code § 54.001 which authorizes a fine or penalty of up to $2,000 for a violation of a city ordinance that governs public health and sanitation. TEX. LOC. GOV'T. CODE § 54.001.

12.23 of the Texas Penal Code.[14]  Likewise, the City's argument that § 12.41 of the Texas Penal Code should change this analysis is patently frivolous because § 12.41 only applies to the subchapter of the Texas Penal Code applicable to exceptional sentences for repeat and habitual offenders. TEX. PENAL CODE § 12.41.

There is no new evidence before the Court regarding the suspension or revocation of licenses or permits under the ordinance. Therefore, for the reasons set forth herein and in this Court's Order of October 18, 2005, the Court makes permanent its preliminary injunctions regarding the two penalty provisions of § 10-6-11(A) and (B) of the ordinance.

**VIII.  All Other Claims**

The Court finds that any of Plaintiffs' remaining claims for relief not specifically addressed herein fail as a matter of law.

**IX.  Pending Prosecutions Under the Ordinance**

All pending prosecutions under the ordinance shall proceed in accordance with the permanent injunctions entered by this Court.

**Conclusion**

In accordance with the foregoing:

IT IS ORDERED that the term "necessary steps" under § 10-6-2(E) is unconstitutionally vague;

IT IS FURTHER ORDERED that the City of Austin is ENJOINED from holding the owner or operator of a public place liable for failure to take "necessary steps" beyond the following two steps set forth in Austin City Code § 10-6-8: failure

---

[14] Texas Local Government Code § 54.001 never uses the term "misdemeanor."

to post no smoking signs and failure to remove ashtrays and other smoking accessories;

IT IS FURTHER ORDERED that the City of Austin is ENJOINED from (1) suspending or revoking any city permits or licenses pursuant to Austin City Code § 10-6-11(B) without allowing for expeditious judicial review; and (2) imposing any fine pursuant to Austin City Code § 10-6-11(A) that violates Texas Penal Code § 6.02(f) by exceeding $500;

IT IS FURTHER ORDERED that the City may enforce the remainder of the ordinance as written and interpreted by the City; and

IT IS FINALLY ORDERED that all remaining pending motions are DISMISSED AS MOOT.

SIGNED this the 4th day of October 2006.

*Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE